IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO. BK16-41913 |
| N. CURTIS DUNLOP and | ) | |
| CYNTHIA L. DUNLOP, | ) | CHAPTER 7 |
| | ) | |
| Debtor(s). | ) | |
| DANIEL J. CASAMATTA, | ) | |
| Acting United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | ADV. PROCEEDING NO. A17-4035 |
| | ) | |
| vs. | ) | |
| | ) | |
| N. CURTIS DUNLOP and | ) | |
| CYNTHIA L. DUNLOP, | ) | |
| | ) | |
| Defendants. | ) | |
| ADAMS BANK & TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ADV. PROCEEDING NO. A17-4037 |
| vs. | ) | |
| | ) | |
| N. CURTIS DUNLOP and | ) | |
| CYNTHIA L. DUNLOP, | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER</u>

A trial on the complaints in these adversary proceedings was held by video conference on March 28, 2019. James Bocott appeared for the debtors, Michael Samuelson appeared for Adams Bank & Trust, and Jerry Jensen appeared for Acting United States Trustee Daniel Casamatta. The court received witness testimony and documentary evidence. The parties were given time to file written closing arguments; those have been submitted. The matter is now ready to be decided.

Having considered the evidence and the law, I find that judgment should be entered in favor of the debtors in both cases.

Both complaints contain allegations of missing assets, discrepancies between the value of assets listed by the debtors on pre-petition financial statements and those listed on the bankruptcy schedules, and errors and omissions in the bankruptcy schedules and statement of financial affairs. Both complaints seek denial of discharge for the debtors pursuant to 11 U.S.C. § 727(a)(2) for

concealing property of the bankruptcy estate, § 727(a)(4)(A) for making false oaths on the bankruptcy schedules and statement of financial affairs and at their § 341 meeting, and § 727(a)(5) for failing to adequately explain the loss or deficiency of assets. Adams Bank & Trust also requests a determination that the debtors' obligation to it is not dischargeable under 11 U.S.C. § 523(a)(2)(B) because the debtors made materially false representations regarding their financial condition in written financial statements upon which the bank relied to its detriment.

### I. Factual Background

The basic and uncontested facts are as follows:

1. Debtor N. Curtis Dunlop is a Nebraska-licensed chiropractor doing business in North Platte, Lincoln County, Nebraska.

2. On December 9, 2016, the debtors formed INNATUS PC. N. Curtis Dunlop continues his employment as a chiropractor with INNATUS P.C.

3. INNATUS P.C. is wholly owned by the debtors.

4. Prior to employment with INNATUS P.C., N. Curtis Dunlop was employed as a chiropractor with JNAC Limited.

5. N. Curtis Dunlop has done business under both JNAC Limited and the more recently formed entity INNATUS P.C. as Chiropractic Life Center.

6. Daniel Casamatta is the Acting United States Trustee for the District of Nebraska.

7. Adams Bank & Trust is a banking corporation duly organized and existing under and by virtue of the banking laws of the State of Nebraska, with its principal place of business located in Ogallala, Keith County, Nebraska.

8. The debtors' current debt to Adams Bank is based upon the following transactions and documents:

    a. A promissory note dated January 10, 2014, executed by N. Curtis Dunlop and Cynthia L. Dunlop, payable to Adams Bank in the sum of $184,000 with an initial maturity date of February 10, 2034.

    b. A promissory note dated July 23, 2014, executed by JNAC Limited and N. Curtis Dunlop, payable to Adams Bank in the sum of $172,289.92 with an initial maturity date of July 22, 2019.

    c. A personal balance sheet provided to Adams Bank for the purpose of obtaining credit dated and signed by N. Curtis Dunlop and Cynthia L. Dunlop on July 23, 2014. The balance sheet stated that the Dunlops owned jewelry and furniture

         with a value of $92,000.00 and personal property other than vehicles with a value of $181,000.00.

    d.    A business balance sheet for JNAC Limited provided to Adams Bank for the purpose of obtaining credit dated and signed by N. Curtis Dunlop and Cynthia L. Dunlop on July 23, 2014. The balance sheet valued the business's machinery and equipment at $349,129.00.

    e.    A promissory note dated August 24, 2015, executed by JNAC Limited and N. Curtis Dunlop, payable to Adams Bank in the sum of $100,156.46, with an initial maturity date of July 1, 2016.

    f.    A personal balance sheet provided to Adams Bank for the purpose of obtaining credit dated and signed by N. Curtis Dunlop and Cynthia L. Dunlop on August 24, 2015. The balance sheet stated that the Dunlops owned jewelry and furniture with a value of $95,000.00 and personal property other than vehicles with a value of $196,000.00. The balance sheet indicated that the total value of all assets owned by the Dunlops was $715,011.00.

    g.    A business balance sheet for JNAC Limited provided to Adams Bank for the purpose of obtaining credit dated and signed by N. Curtis Dunlop and Cynthia L. Dunlop on August 24, 2015. The balance sheet valued the business's machinery and equipment at $307,768.00.

    h.    A promissory note dated July 22, 2016, executed by JNAC Limited and N. Curtis Dunlop and Cynthia L. Dunlop, payable to Adams Bank in the sum of $27,117.26 with an initial maturity date of March 1, 2027.

9. Adams Bank has maintained the balance sheets referenced above.

10. Adams Bank renewed notes for the Dunlops in May/June of 2015, prior to the Dunlops' executing updated balance sheets.

11. On December 22, 2016, the Dunlops jointly filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code which was docketed as Case No. BK16-41913 in this court.

12. Philip M. Kelly was appointed as the Chapter 7 trustee for the case.

13. These adversary proceedings also arise under and are related to the Chapter 7 case.

14. On January 6, 2017, the debtors filed their schedules of assets and liabilities, more particularly described as Schedules A through J ("the Schedules"), in the bankruptcy case.

15. On January 6, 2017, the debtors also filed a Statement of Financial Affairs in the bankruptcy case.

16. The debtors signed a declaration dated January 6, 2017, declaring under penalty of perjury that they had read the Schedules and Statement of Financial Affairs in the bankruptcy case and that they were true and correct.

17. The debtors' Schedule A/B totals $330,437.93 and consists of real estate valued at $195,635.00 and personal property valued at $134,802.93. The personal property consists of automobiles with a value of $48,000.00; household goods and furnishings valued at $2,000.00; electronics valued at $250.00; collectibles and valuables valued at $250.00; and jewelry valued at $2,400.00.

18. Question 4 of Schedule A/B asks debtors to describe any watercraft, aircraft, motor homes, ATVs and recreational vehicles, other vehicles, and accessories they own. The Dunlops reported owning a 2008 Malibu 19-foot boat with trailer and a 2014 Kawasaki jet ski.

19. Question 9 of Schedule A/B asks debtors to describe any sports and hobby equipment they own. The Dunlops reported owning a treadmill, golf clubs and bag.

20. The debtors' Schedule A/B does not disclose that they own a boat dock.

21. Question 23 of the Statement of Financial Affairs asks debtors whether they hold or control any property owned by someone else, including any property they are storing for someone. In their response, the Dunlops did not disclose that they were storing automotive equipment and tools for someone else in their warehouse/storage unit.

22. After the bankruptcy case was filed, the initial meeting of creditors pursuant to 11 U.S.C. § 341 was held on February 9, 2017. Following adjournment, a continued § 341 meeting of creditors was held on March 22, 2017. Both meetings are referred to collectively hereafter as "the § 341 meeting."

23. The Dunlops testified under oath at the § 341 meeting that they had listed all of their assets on their schedules and that their bankruptcy schedules and statements were true and correct.

24. Trustee Kelly conducted an on-site inspection of the Dunlops' property in North Platte and a warehouse/storage unit rented by the Dunlops. The Chapter 7 Trustee discovered that the debtors owned a boat dock that was not listed on the schedules. At the inspection of the storage unit, N. Curtis Dunlop represented that the automotive equipment and tools in the warehouse/storage unit belonged to someone other than the debtors.

25. N. Curtis Dunlop provided a personal financial statement to Western Nebraska Bank dated February 1, 2016. That financial statement stated that the Dunlops owned jewelry and furniture with a value of $95,000.00 and personal property other than vehicles separately listed with a value of $196,000.00. The personal financial statement indicated that the total value of all assets owned by the Dunlops as of February 1, 2016, was $686,000.00.

26. The United States Trustee requested the Dunlops to provide an explanation of what happened to the jewelry, furniture, and personal property listed on the financial statements provided to Adams Bank and Western Nebraska Bank. The Dunlops provided the United States Trustee with a joint affidavit dated March 15, 2017, which included an itemization of the jewelry and furniture assets. The total value of the itemized jewelry was $28,300.00 to $30,300.00. The total value of the itemized furniture was $56,300.00. The itemization further indicated that furniture valued at $39,500 had been sold in 2015 and furniture valued at $11,150.00 was sold with their former house. Additionally, the itemization indicated that a washer/dryer valued at $2,500.00 was given away in 2015.

Under these facts, the issues for trial were:

1. Whether the Dunlops, with the intent to hinder, delay, or defraud a creditor or officer of the estate, concealed property of the estate by failing to disclose on their bankruptcy schedules that they owned a boat dock.

2. Whether the Dunlops, with the intent to hinder, delay, or defraud a creditor or officer of the estate, made a false oath when they failed to disclose on their bankruptcy schedules and statements that they owned a boat dock and failed to disclose that they were storing property for another person.

3. Whether the Dunlops, with the intent to hinder, delay, or defraud a creditor or officer of the estate, made a false oath when they testified at the first meeting of creditors that the schedules and statements were true and correct.

4. Whether the Dunlops have failed to explain satisfactorily, before determination of discharge, any loss of assets or deficiency of assets to meet their liabilities.

5. Whether the Dunlops obtained money, property, services, or an extension, renewal, or refinancing of credit from Adams Bank by use of a materially false statement in writing respecting the debtors' or the debtors' business's financial condition, on which the bank reasonably relied and that the debtors caused to be made or published with the intent to deceive the bank.

## II. Discussion

Denial of discharge is "a serious matter not to be taken lightly by a court." *McDonough v. Erdman (In re Erdman)*, 96 B.R. 978, 984 (Bankr. D.N.D. 1988). It "is akin to financial capital punishment" and "is reserved for the most egregious misconduct by a debtor." *United States Trustee v. Beard (In re Beard)*, 595 B.R. 274, 289 (Bankr. E.D. Ark. 2018) (quoting *Manning v. Watkins (In re Watkins)*, 474 B.R. 625, 630 (Bankr. N.D. Ind. 2012)).

The provisions of § 727 are strictly construed in the debtors' favor, while remaining cognizant that § 727 exists to prevent a debtor's abuse of the Bankruptcy Code. *Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 589-90 (Bankr. D. Minn. 1987). Once a party objecting to a debtor's discharge "establishes a prima facie case, the burden then shifts to the debtor defendant to offer credible evidence to satisfactorily explain his conduct." *Robbins v. Haynes (In re Haynes)*, 549 B.R. 677, 685

(Bankr. D.S.C. 2016); Fed. R. Bankr. P. 4005; *Kaler v. Charles (In re Charles)*, 272 B.R. 680, 683-84 (B.A.P. 8th Cir. 2012).

Overall, I found all of the trial witnesses, including Mr. Dunlop, to be credible.

A. § 727(a)(2)

Section 727(a)(2) of the Bankruptcy Code states, in relevant part, that:

> (a) The court shall grant the debtor a discharge, unless —
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

To prevail on the complaint, the plaintiffs must show that (1) the debtor's actions took place within twelve months prior to the filing of the petition for bankruptcy relief; (2) the debtor took the actions with the intent to hinder, delay or defraud his creditors; (3) the debtor himself took the actions; and (4) the debtor's actions consisted of transferring or concealing property. *Georgen-Running v. Grimlie (In re Grimlie)*, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010); *City Nat'l Bank of Ft. Smith, Ark. v. Bateman (In re Bateman)*, 646 F.2d 1220, 1222 (8th Cir. 1981).

Here, Adams Bank and the U.S. Trustee claim the Dunlops violated § 727(a)(2) by concealing their ownership of a boat dock when they failed to disclose it on their bankruptcy schedules. The Chapter 7 trustee noticed the dock when he inspected the debtors' lake residence. The debtors' evidence indicates they classified the dock as a fixture or attachment to real estate, in reliance on the advice of counsel, and always considered the dock to be a part of the real estate.

For purposes of § 727(a)(2), concealment is a continuing event and typically is found when the interest of the debtor in property is not apparent but where actual or beneficial enjoyment of that property continued. *Kaler v. Craig (In re Craig)*, 195 B.R. 443, 449 (Bankr. D.N.D. 1996); *Sears v. Sears*, 863 F.3d 980, 984 (8th Cir. 2017).

The debtor's actual, subjective intent to hinder, delay or defraud is a requisite element of denial of a discharge. *Helena Chem. Co. v. Richmond (In re Richmond)*, 429 B.R. 263, 304 (Bankr. E.D. Ark. 2010). The overriding principle applicable in virtually all cases under § 727(a) is that "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor." *U.S. Trustee v. Govani (In re Govani)*, 509 B.R. 675, 683 (Bankr. N.D. Iowa 2014) (quoting *Phillips v. Epic Aviation (In re Phillips)*, 476 Fed. Appx. 813, 816 (11th Cir. 2012)).

The evidence in this matter does not support a finding that the debtors hid their ownership of the property while retaining a secret interest, or that they intended to hinder, delay, or defraud a creditor or the trustee. I found Mr. Dunlop's testimony to be credible that he considered the dock to be part of the real property to which it was attached and was bought and sold along with and included in the real estate. Likewise, the Chapter 7 trustee testified that a decision as to whether to classify an item as a fixture or as personal property is not subject to specific guidelines and should be discussed by debtors and their attorneys. Because the debtors, with the advice of counsel, made a reasonable decision to classify the dock as a fixture, I find no intent on the part of the debtors to hinder, delay, or defraud the bank or the trustee by not separately listing the boat dock on the bankruptcy schedules.

B.  § 727(a)(4)(A)

To deny a debtor a discharge under § 727(a)(4)(A), the plaintiffs must prove that "the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case." *Kaler v. Charles (In re Charles)*, 272 B.R. 680, 684 (B.A.P. 8th Cir. 2012) (citing *Lincoln Sav. Bank v. Freese (In re Freese)*, 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011)). Well-established case law holds that because the statements made by a debtor in his schedules and statements and at the meeting of creditors are signed under penalty of perjury and made under oath, they constitute "oaths" for purposes of § 727(a)(4)(A). *Id.* (citing *Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001)); Fed. R. Bankr. P. 1008.

Here, Adams Bank and the trustee allege the Dunlops made a false oath when they failed to disclose on their bankruptcy schedules and statements that they owned a boat dock and failed to disclose that they were storing property for another person, and when they testified at the first meeting of creditors that the schedules and statements were true and correct.

A false oath bars discharge in bankruptcy if it is both material and made with an intent to defraud. *Jordan v. Bren (In re Bren)*, 122 Fed. Appx. 285, 286 (8th Cir. 2005) (citing *Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001)). The threshold of materiality is fairly low. *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000). A matter is "material" if it concerns the discovery of assets or the existence and disposition of estate property, or bears a relationship to the debtor's business transactions or estate. *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992); *Ellsworth v. Bauder (In re Bauder)*, 333 B.R. 828, 830 (B.A.P. 8th Cir. 2005); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam). The value of omitted assets is relevant to materiality, but materiality will not turn on value; an omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent. *Mertz*, 955 F.2d at 598; *Palatine Nat'l Bank v. Olson (In re Olson)*, 916 F.3d 481, 484 (8th Cir. 1990).

Intent can be established by circumstantial evidence, *Korte*, 262 B.R. at 474, and reckless disregard for the truth will support a finding of fraudulent intent for the purpose of denying a debtor his discharge under § 727(a)(4)(A). *Bank of Bennington v. Thomas (In re Thomas)*, 431 B.R. 468, 472 (B.A.P. 8th Cir. 2010) (citing *Korte* at 474).

"Statements made in schedules are signed under penalties of perjury and have 'the force and effect of oaths,' and testimony elicited at the first meeting of creditors is given under oath." *Korte*, 262 B.R. at 474 (quoting *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993)). Nevertheless, whether a debtor made a false oath under § 727(a)(4)(A) is a question of fact, *McDermott v. Petersen (In re Petersen)*, 564 B.R. 636, 649 (Bankr. D. Minn. 2017) (citing *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000)), and denial of discharge "takes more than an honest mistake or oversight by the debtor." *Id.* (citing *Giansante & Cobb, LLC (In re Singh)*, 433 B.R. 139, 154 (Bankr. E.D. Pa. 2010)).

As I found above, the evidence before me establishes that the Dunlops reasonably believed the boat dock was part of the real estate and was included in its sale. The dock's exclusion from the schedules was not done with intent to defraud creditors. Accordingly, it did not violate § 727(a)(4)(A).

With regard to the property they stored for another person, they admit that they did not carefully read the question on the statement of financial affairs and were not thinking of property belonging to someone else as "theirs" although it technically was in their possession because it was being kept in their storage unit. The other party possessed a key and full access to the storage unit, so the debtors understandably did not think of including the other person's property in their list of assets. These facts fail to establish fraudulent intent on the part of the debtors. There also is no evidence of materiality, as the debtors did include on the schedules all of their own property that was in the storage unit, and the owner of the remaining property confirmed his ownership to the Chapter 7 trustee. This omission does not violate § 727(a)(4)(A).

Likewise, the debtors' § 341 testimony that their bankruptcy documents were true and correct does not give rise to a finding that discharge should be denied under this subsection. There is no evidence of fraudulent intent, or even a reckless disregard for the truth that would lead to an inference of fraudulent intent. The omissions from the schedules were, at most, an oversight, based in part on the reasonable reliance on advice from counsel. An honest mistake or oversight by the debtor cannot support the denial of discharge.

C.    § 727(a)(5)

Section 727(a)(5) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." If the debtor's explanation is too vague, indefinite, or unsatisfactory, then the debtor is not entitled to a discharge. *Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011) (citing *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 766 (B.A.P. 8th Cir. 1992)). The explanation given by the debtor must be definite enough to convince the trial judge that assets are not missing. *Id.*

Unlike the other subsections of § 727, intent is not a factor here. This subsection simply requires a finding as to the reasonableness of the debtor's explanation for the missing assets, which boils down to the credibility of the evidence. *Vilhauer*, 458 B.R. at 514-15, 516.

Here, Adams Bank and the trustee allege the Dunlops have failed to explain satisfactorily the discrepancies between the value of assets listed in their balance sheets and financial statements and those listed on their bankruptcy schedules. The bank noted that Mr. Dunlop acknowledged that the value of personal property listed in his financial statements continued to include the value of furnishings sold with a condo even after the sale.

Mr. Dunlop testified at trial that he was close personal friends with the Adams Bank branch president, Dudley Oltmans, and they had done business together for years. He explained that Mr. Oltmans was his primary contact at the bank, and based on the length of their business and personal relationship, their practice was for Mr. Oltmans to prepare financial statements based on his knowledge of the debtors' assets, with the debtors' input, for the debtors to sign in support of his requests for loans. Bank representatives testified that such a practice is inconsistent with the bank's policies and procedures. Mr. Oltmans could not testify as to the parties' practices because he is deceased. Mr. Dunlop indicated that he generally used the assets' replacement value for the financial statements. He also just accepted the values suggested by Mr. Oltmans

Mr. Dunlop further testified that the lower valuations on the bankruptcy schedules arose from counsel's decision to use a conservative estimate of the liquidation value of the assets. It is neither uncommon nor wrong to use a "garage sale" or liquidation value for personal property on Chapter 7 bankruptcy schedules. *Pavelka v. Allstate Prop. & Cas. Ins. Co.*, 91 F. Supp. 3d 931, 937 (E.D. Mich. 2015); *see also Neidenbach v. Amica Mut. Ins. Co.*, 842 F.3d 560 (8th Cir. 2016) (holding that the $255,000 discrepancy between "garage sale value" of assets listed on bankruptcy schedules – which are presumed to be accurate – and the "fair market value" of those assets on an insurance proof of loss indicated intentional misrepresentation on the insurance claim).

With regard to specific assets that the plaintiffs express concerns about, the debtors did negotiate with the Chapter 7 trustee to purchase the non-exempt value of the jewelry – which was appraised at $6,331 and scheduled as fully exempt at $2,400 – for $5,000. They also purchased the equity in the unscheduled boat dock for $2,000. Mr. Dunlop also explained that some furnishings were sold with a condo sale, which is why he did not list those assets in his schedules.

In addition, the bank raised the issue of certain equipment that is missing or was transferred to another entity. As to the allegedly missing equipment, the bank did not identify anything other than a piece of equipment that was in the shop for repairs. With regard to the equipment allegedly transferred or sold to another entity, Mr. Dunlop explained that the bank was aware he intended to pay himself for the value of his chiropractic practice after he sold the assets to a new company.

The evidence does indicate the other entity is currently using the equipment, regardless of how it acquired it or whether the bank received any money for it. This gives the bank at least two possible solutions: first, the bank obtained relief from the automatic stay as to the equipment in December 2018, so it has the legal authority to repossess and sell the equipment. Second, Mr. Dunlop testified that he has repeatedly offered to purchase the equipment from the bank, but the bank has not responded. The debtors should not be penalized by a denial of discharge when the bank holds the power to liquidate the collateral but opts not to do so.

The debtors have sufficiently explained the discrepancies raised by the plaintiffs and should not be denied discharge under § 727(a)(5).

D.  § 523(a)(2)(B)

The bank argues that even if the court finds the debtors should receive a discharge, the debt owed to it should be excepted from that discharge because the debtors induced the bank via materially false representations on balance sheets and financial statements to extend financing to them.

To show a debt is non-dischargeable under § 523(a)(2)(B), a creditor must prove "that the debtor obtained money by (1) use of a statement in writing that was materially false; (2) that pertained to [the debtor's] or [the debtor's business's] financial condition; (3) on which the plaintiff reasonably relied; and (4) that the debtor made with the intent to deceive the plaintiff." *Bank of Neb. v. Rose (In re Rose)*, 483 B.R. 540, 543-44 (B.A.P. 8th Cir. 2012). "Financial condition" means "one's overall financial status." *Lamar, Archer & Cofrin, LLP v. Appling*, ___ U.S. ___, 138 S. Ct. 1752, 1761 (2018).

A financial statement is materially false if it "paints a substantially untruthful picture of a debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Wallander v. Wallander (In re Wallander)*, 324 B.R. 746, 752 (Bankr. N.D. Iowa 2005) (quoting *Burbank v. Capelli (In re Capelli)*, 261 B.R. 81, 90 (Bankr. D. Conn. 2001)); *Capital City Bank & Trust v. Kroh (In re Kroh)*, 88 B.R. 987, 994 (Bankr. W.D. Mo. 1988) (stating that a financial statement is materially false if it, as a whole, falsely represents the debtor's overall financial condition or contains major omissions); *Northland Nat'l Bank v. Lindsey (In re Lindsey)*, 443 B.R. 808, 813 (B.A.P. 8th Cir. 2011); *Southeast Nebraska Coop. Corp. v. Schnuelle (In re Schnuelle)*, 441 B.R. 616, 623 (B.A.P. 8th Cir. 2011).

Reasonable reliance is determined by looking at the totality of the circumstances. *First Nat'l Bank of Olathe v. Pontow (In re Pontow)*, 111 F.3d 604, 610 (8th Cir. 1997). The court may consider if there were any "red flags" that would have alerted the creditor to the possibility that the financial statement was not accurate and whether minimal investigation would have revealed the inaccuracy. *Id.* (citing *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir. 1993) (en banc)). When a financial statement is inaccurate on its face, and the creditor has knowledge of the inaccuracies, any reliance by the creditor on the financial statement is unreasonable. *R & R Ready Mix, Inc. v. Freier (In re Freier)*, 402 B.R. 891, 899 (B.A.P. 8th Cir. 2009).

For discharge to be barred, the debtor must have acted with intent to deceive. An intent to deceive does not mean that the debtors acted with a "malignant heart." *Agribank, FCB v. Webb (In re Webb)*, 256 B.R. 292, 297 (Bankr. E.D. Ark. 2000)). A creditor may establish such intent by proving reckless indifference to or reckless disregard of the accuracy of the information in a debtor's financial statement. *Fairfax State Sav. Bank v. McCleary (In re McCleary)*, 284 B.R. 876, 888 (Bankr. N.D. Iowa 2002). Factors to consider include whether the debtor was intelligent and experienced in financial matters, and whether there was a clear pattern of purposeful conduct. *Id.* (citations omitted). Once the creditor establishes that the debtor had actual knowledge of the false statement, the debtor cannot overcome the inference of the intent to deceive with unsupported

assertions of honest intent. *Heritage Bank of St. Joseph v. Bohr (In re Bohr),* 271 B.R. 162, 169 (Bankr. W.D. Mo. 2001).

In this case, the evidence does not establish either reliance or intent. Deposition testimony from the bank's president indicates the bank accepted the financial statements merely as a formality before extending the maturity dates on some of the loans, so the bank cannot claim that it relied on the financial statements to approve a loan. Although the bank placed into evidence a personal financial statement the debtors provided to Western Nebraska Bank on February 1, 2016, with information that is contrary to what was included in the Adams Bank financial statements and balance sheets, there is absolutely no proof Adams Bank relied on this statement to extend credit to the debtors.

While the evidence does indicate some vastly divergent valuations of the personal property between the Adams Bank financial statements and the bankruptcy schedules, there is no evidence that the values were not accurate when the financial statements were created. In fact, the testimony indicated that Mr. Oltmans suggested the values. The bank did not do its own appraisals or valuations of the personal property either before or after bankruptcy. There is no evidence that the debtors intentionally or with reckless indifference used false valuations on the financial statements to induce the bank to act. Rather, it appears the bank is now using § 523(a)(2)(B) to try to protect itself from poor decision-making in 2015 concerning the amount of lending risk it was willing to tolerate with regard to the debtors.

### III.  Conclusion

The evidence before the court fails to establish that the debtors should be denied a discharge or that the debt to Adams Bank should be excepted from discharge. Separate judgment will be entered in favor of the debtors, dismissing these complaints and discharging the debts.

DATED: June 5, 2019.

>BY THE COURT:
>
>/s/Thomas L. Saladino
>Chief Judge

Notice given by the Court to:
    James Bocott
    *Michael Samuelson
    Jerry Jensen

Movant (*) is responsible for giving notice to other parties if required by rule or statute.